## SAMUEL P. SNIDER v. P. J. LYONS AND OTHERS.[1]

May 19, 1916.

Nos. 19,389—(14).

**Broker—substituted agreement for commission—action for money.**

Plaintiff and defendants agreed that the former should receive a cash commission in case he procured a purchaser for certain lands owned by defendants at a price and upon terms satisfactory to them. Claiming that he procured such a purchaser, that thereafter he agreed to take and did take as his commission stock in a corporation instead of cash, that defendants were guilty of fraud that entitled him to rescind this transaction, and that he did so rescind, plaintiff brought this action to recover the cash commission under the orginal agreement. It is *held*:

(1) Plaintiff must prevail, if at all, on the theory of his complaint. No issues other than those there presented were litigated by consent. To recover on the original agreement it was necessary for plaintiff to establish his right to rescind the transaction in which he agreed to and did take stock instead of a cash commission, and that he had earned the cash commission originally agreed upon.

(2) The evidence sustains a finding to the effect that the original agreement was abrogated and the agreement to take stock substituted therefor before plaintiff procured a purchaser, and that he never earned the cash commission agreed upon. If he has any remedy it is not that

[1]Reported in 157 N. W. 1002.

sought in this action, and cannot be had herein, under the pleadings and evidence.

(3) There was no error in the refusal of the trial court to amend its findings or to make additional findings.

Action in the district court for Hennepin county to recover $23,980 for services in making sale of defendants' lands. The substance of the complaint is stated at the beginning of the opinion. The case was tried before Dickinson, J., who made findings and ordered judgment in favor of defendants. From an order denying his motions for additional findings and amended findings or for a new trial, plaintiff appealed. Affirmed.

*M. H. Boutelle* and *A. M. Higgins,* for appellant.

*Booth & McDonald* and *Lancaster, Simpson & Purdy,* for respondent.

BUNN, J.

Plaintiff alleged that defendants employed him as a broker in the sale of certain Colorado lands, at an agreed commission of one dollar per acre in the event of sale; that plaintiff earned this commission, amounting to $23,980; that defendants and plaintiff then agreed that the latter should accept the commission thus earned in the capital stock of a corporation to be formed to take over the property received in the trade brought about by plaintiff, this property being valued at $208,000, plaintiff to receive 23/208 of the stock issued, or 230 shares; it was then alleged that in December, 1912, in "ostensible conformity" to this agreement with plaintiff, defendants caused to be delivered to him these 230 shares; that plaintiff, believing they were issued in accordance with the terms of his agreement, accepted the shares and retained them until July, 1913, when he discovered that defendants had caused the land so taken in the trade to be conveyed to the corporation, but subject to a lien in their own favor aggregating $65,000, represented by a note and mortgage executed by the corporation. Claiming that this was fraud which entitled him to rescind, plaintiff tendered back the stock, notified defendants that he repudiated the transaction, and then brought this action to recover on the original commission agreement. The above statement is sufficient to show the nature of this action, which is clearly

to recover damages for the breach of the contract to pay a cash commission. In order to prevail it was necessary for plaintiff to establish: (1) His right to rescind, and (2) his performance of the original agreement. The answer admitted the agreement to pay plaintiff one dollar per acre in case he was successful in negotiating a sale; denied that a sale was negotiated under this agreement; alleged a subsequent agreement by plaintiff to take, instead of a cash commission, stock in a corporation to which the property taken in exchange for the Colorado lands was conveyed; denied all the allegations of fraud, and alleged that the stock was issued to plaintiff with full knowledge on his part of the liens and incumbrances placed against the property so conveyed to the corporation.

The case was tried to the court without a jury, and the decision was for defendants. Plaintiff moved for amended findings of fact, and for additional findings, and, if these motions were denied, for a new trial. The trial court denied the motions for amended and additional findings and denied a new trial. From this order plaintiff appealed to this court.

The assignments of error need not be separately stated or considered. They challenge the findings of the trial court as not sustained by the evidence, and its refusal to make the amended and additional findings requested.

This case is one of complicated facts and conflicting evidence, but the view we take makes it unnecessary to go into much detail. That defendants owned or controlled the Colorado lands, and that they employed plaintiff to negotiate a sale thereof on terms satisfactory to them, agreeing to pay him one dollar per acre for his services in case of a sale, is all admitted. It is also admitted that plaintiff interested Hurd & Simpson in the lands, and that, in the end, a trade was made by which Hurd & Simpson took the Colorado lands at a stated valuation, and gave to defendants in exchange certain apartment houses in Minneapolis, at a stated valuation. It is also not in dispute that plaintiff, at some time during the negotiations with Hurd & Simpson, entered into an agreement with defendants to take as his commission in case of a trade, stock in the corporation to which the Minneapolis property was to be conveyed, instead of cash, and that this stock was subsequently

issued to and accepted by him. At what time this agreement to take stock instead of cash was made, whether before or after plaintiff earned his commission, was an important if not controlling question in the case. This is manifest when we consider the theory of the complaint and the claim of plaintiff as to his right to rescind this agreement and recover on the original agreement. If the agreement to take stock was made before the trade with Hurd & Simpson had been agreed upon, the original agreement is entirely out of the way, and plaintiff, while not without a remedy for any subsequent fraud that affected the value of his stock, has no standing on the theory of a right to recover on that agreement. And at this point it is well to dispose of a contention made by plaintiff that he can recover in this action on some other theory than that of his complaint. We do not think he can. The case was tried on the issues made by the pleadings, and we perceive no ground for holding that any other issues were litigated by consent. If plaintiff has a cause of action that is not based upon the original agreement for a cash commission, for example, a cause of action for damages for fraudulent representations, or for wrongful acts of defendants which diminished the value of his stock, he should plead and address his proof to such cause of action. It is conceded by defendants that a judgment adverse to plaintiff in the present case will not be a bar to such an action, and this is quite clearly so.

.The controlling question on this appeal is therefore whether the finding of the trial court to the effect that the first proposed trade with Hurd & Simpson was definitely "called off," that thereafter, in order to help a new deal, plaintiff agreed to take his commission in stock instead of cash, and that the trade actually carried out was made after this agreement, is sustained by the evidence.

A recital of some of the facts is necessary to an understanding of the question to be decided. After the acceptance by defendant Lyons, on July 31, 1912, of plaintiff's written offer to accept one dollar per acre for all lands for which he obtained purchasers whose prices and terms should be approved by defendants, Hurd & Simpson, pursuant to plaintiff's efforts, discussed with defendants the terms of a proposed trade of the Colorado lands either for certain Atlantic City mortgages, or the two flat buildings in Minneapolis. It is at this point that the facts

are no longer admitted. Plaintiff claims, and testifies in support of his claim, that these negotiations, begun October 19, ended on the twenty-first or twenty-second in an agreement between defendants and Hurd & Simpson to exchange the Colorado lands for the flat buildings, that it was then agreed between plaintiff and defendants that a corporation should be formed to take over the flat buildings, or the equity therein, amounting to $208,000, and that the corporation should issue its stock to that amount. Plaintiff's evidence is that, after the agreement between defendants and Hurd & Simpson had been reached, he agreed to take stock to the amount of $23,000 as his commission instead of cash. Defendants, on the other hand, testify in substance that the deal with Hurd & Simpson was declared off because defendants were required to put too much cash into it, and that subsequently, in order to induce them to renew negotiations with Hurd & Simpson, plaintiff finally agreed, in case of a trade, to take his commission in the stock of the corporation. The trial court found defendants' version the true one, and after a careful examination of the record and much consideration of the strenuous arguments of plaintiff's counsel against this finding, we are wholly unable to say that it is not supported by the evidence. It will benefit no one to discuss the evidence in detail. Much is said in the briefs in regard to the falsity of the testimony offered to support the claim of defendants thus found true by the trial court, but it can hardly be disputed that the question was purely one of fact, and the evidence decidedly conflicting. It is very clearly, in our opinion, a case where the decision of the trial court must stand.

It is manifest that it was entirely competent for the parties to make the new agreement as to plaintiff's commission in case a deal was consummated. And it is entirely clear, under the finding of the trial court which we sustain, that the old agreement was abrogated and out of the way. Even though plaintiff's rescission of the new agreement was justified, which we do not determine, although it would seem that if there was fraud it was after plaintiff had agreed to take the stock, he has no right to recover on the old agreement. At most he could recover the reasonable value of his services, and the evidence is entirely wanting to show such value. As stated before, we think that plaintiff, under the pleading and proof in this action, cannot recover damages for the loss

in value of his stock, claimed to have been caused by the placing of a sixty-five thousand dollar mortgage upon the property of the corporation.

The refusal of the trial court to find as to the accuracy, validity or proper amount of this lien was not error in view of the theory upon which plaintiff pleaded and tried his case. Nor do we find any error in refusing to amend or add to the findings as asked by plaintiff.

We have purposely omitted a discussion of the claims of fraud in placing the $65,000 mortgage on the property taken in exchange, and have refrained from stating the complicated facts and evidence which bear upon this question.

Order affirmed.